## TOWNE v. TOWNE.
Nos. 8522-8524
Submitted April 9, 1945. Decided May 31, 1945.
159 Pac. (2d) 352.

454

Mr. Harlow Pease, of Butte, for appellant.

Messrs. McCaffery & McCaffery, of Butte, for respondent.

MR. JUSTICE CHEADLE, delivered the opinion of the court.

This controversy, in an earlier phase, was formerly before this court, the decision being reported in State ex rel. Towne v. Second Judicial District Court, 114 Mont. 1, 132 Pac. (2d) 161, 163. This appeal involves questions in addition to those raised by the former.

On September 6, 1935, Katherine Towne, respondent, filed suit, in Deer Lodge county, against Charles W. Towne, appel-. lant, for divorce, alimony, attorney's fees and custody of the minor daughter of the parties. On the following day, and while

the action was pending on demurrer, the parties executed an agreement of settlement of their property rights and other matters. This provided that if and when respondent should be awarded a decree of divorce absolute, the terms of the contract, subject to approval of the court, "shall be and constitute the rights and obligations of the parties hereto in lieu of the relief sought by the party of the first part in her aforesaid action, in addition to a decree of divorce absolute."

Paragraph 1 provides that respondent shall have the care, custody and control of the minor daughter of the parties, with the right of visitation by appellant. Paragraph 2 provides that: "The party of the second part [appellant] has agreed to pay, and will pay, to party of the first part [respondent], the sum of One Hundred Fifty ($150.00) Dollars per month * * * as and for the support and maintenance of the first party and the aforesaid minor child * * *; provided, however, that in the event the party of the first part shall remarry, or that she shall otherwise become possessed of an income sufficient to that end, apart from her own earnings as they may hereafter arise, the obligation of the second party in the sum of One Hundred Fifty ($150.00) Dollars per month for the purposes above specified, shall terminate, and that, thereafter, obligation with respect to the support and maintenance of said minor child, Patricia, shall be determined either by the mutual agreement by the parties hereto, subject to the approval of the court, or otherwise as the law shall provide." Other provisions of the agreement relate to property settlement and costs and attorney's fees in the divorce action.

On September 17, 1935, the cause was submitted to the court and a decree of divorce was entered. This recites, so far as here pertinent: "From the evidence so submitted the court found that plaintiff and defendant, subsequent to the filing of the complaint herein, had agreed upon a settlement of their property rights, with respect to the amount of monthly alimony to be paid to plaintiff, with respect to attorney's fees and costs of action, and with respect to the custody of

the minor child of plaintiff and defendant, all subject to the approval of the court * * * wherefore, the law and the premises considered, the court hereby approving the terms of the settlement hereinabove referred to, it is ordered, adjudged and decreed * * * that plaintiff * * * is hereby granted a divorce absolute from defendant * * * and there is hereby awarded to her the care, custody, and control of * * * the minor child of plaintiff and defendant, subject to the rights of the defendant, with respect to the visitation and companionship of said minor as set out in the agreement above-mentioned * * *.'' The decree is silent as to payment of alimony or money for support of the minor child, except by express approval by the court of the terms of the settlement agreement, above quoted.

The minor child attained majority in April, 1941. Appellant continued thereafter to make the monthly payments of $150 until December, 1941. With the remittance for that month, appellant sent respondent notice that payments would cease in toto as of that month. In February, 1942, respondent filed in the Silver Bow county district court an action for the recovery of $300, based upon the settlement agreement, due for the months of January and February, 1942. Thereafter respondent filed an amended complaint to include an additional $150 due as the March payment. Writs of attachment were issued and levied. Appellant filed motions to discharge such attachments on the ground that no contract existed for the direct payment of money and that the district court of Deer Lodge county had continuing and exclusive jurisdiction of the subject matter involved. These motions were denied by order dated May 22, 1942, from which order appeal was taken. After the bill of exceptions was settled, but before the filing of notice of appeal, respondent filed a second action in the second department of the Silver Bow county district court to recover $450, unpaid installments for April, May and June, 1942. A writ of attachment was issued and levied.

In July, 1942, appellant here filed in this court his petition for an alternative writ of injunction on the ground that he

was being subjected to a multiplicity of actions arising from the same subject matter, depriving him of an adequate, speedy remedy at law. Order to show cause was issued on July 11th, and respondent thereafter moved that the same be quashed. The appeal and the special proceeding were consolidated in this court.

By its majority opinion, supra, this court granted respondent's motion to quash the alternative writ and affirmed the order overruling the motion to discharge the attachments. Two members of the court dissented. In the opinion this court held that appellant's obligation to make the monthly payments was based upon the settlement contract, and not upon the decree in the divorce action. Disapproving appellant's contention that the contract was in the nature of a stipulation of what the court might provide in its decree, and that approval of the contract by the court amounted to its incorporation in the decree, this court said: "With this view we do not agree. The instrument clearly reveals the intention of the parties to enter into a contract respecting the amount of the support money for the wife and minor child, as well as for the settlement of the property rights. It specifically provides that the respondent accepts the provisions of the agreement in lieu of the relief sought by her original complaint. The court's approval of the terms of the agreement was effective to make it operative by its own terms, and also as an indication that the court thought the matters therein dealt with sufficiently covered so as to obviate the necessity for provision for them in the decree itself. The court in its reference to it used language which characterized the document as an agreement or contract. It is significant to note that the court did specifically provide in its decree for the custody of the child, even though the agreement also contained a similar provision." State ex rel. Towne v. Second Judicial District Court, supra.

Subsequent to the disposal of the first appeal, respondent filed the three actions now involved, which are based on the same contract, and attachments were levied. Following the

course indicated by the opinion on the former appeal, appellant filed a counterclaim or cross-complaint in each of the three actions, asking for reformation of the settlement contract to conform to the real agreement of the parties thereto. These allege, in substance, that the true understanding and meeting of the minds of the parties in making the agreement of September 7, 1935, was that the duty to make the monthly payments specified was based upon the minority of the child and its dependency upon and custody by the mother; that the duty to pay the amount specified should terminate upon the happening of the child coming of age, or of its death; and particularly that "it never was agreed or understood between the plaintiff and defendant that defendant should be obliged to continue to make money payments for the support of said Patricia Towne during her entire life span or after she should have reached the age of majority." It is also alleged and conceded that Patricia Towne attained majority on April 20, 1941.

The answers contained another defense, based upon the provision of the contract that "in the event the party of the first part * * * shall otherwise become possessed of an income sufficient to that end, apart from her own earnings as they may hereafter arise, the obligation of the second party in the sum of One Hundred Fifty ($150.00) Dollars per month for the purposes above specified, shall terminate and that, thereafter, obligation with respect to the support and maintenance of said minor child, Patricia, shall be determined either by the mutual agreement by the parties hereto, subject to the approval of the court, or otherwise as the law shall provide." It was alleged that "plaintiff, during the pendency of this action, became possessed of substantial property and income, which was sufficient for her support and maintenance." It was proved, by respondent's admission, that she received the sum of $6,000 in settlement of a claim for personal injuries sustained by her.

There are thus three questions presented for determination, i.e.:

1. Whether the obligation of appellant to pay to respondent the sum of $150 monthly is decretal or contractual, upon which depends determination of the question of jurisdiction of the Silver Bow county court to entertain these actions. This identical question was presented on the former appeal, this court there holding that the obligation was contractual and upholding the jurisdiction of the courts in which the actions were brought.

2. If the obligation was contractual, whether the trial court erred in refusing to reform the contract in the respect urged.

3. Whether the $6,000 received by respondent as above indicated constituted income, as contemplated by the contract, so as to relieve appellant from the obligation to make the stipulated monthly payments.

As above noted, the court granting the divorce did not adopt the settlement contract, nor did it, actually or by reference, incorporate its terms in the decree. It simply approved its terms, as contemplated by the contract, by a recital in the preamble of the decree. None of the terms of the contract was embodied or provided for in the decree with the exception of the award of custody of the child to the plaintiff. It is our view that the effect of the approval of the agreement by the court, without the incorporation of its terms in the decree, was simply to give force and effect to the agreement and to render its provisions binding upon the parties. The agreement was not, by such approval, made a part of the decree. Such a result is negatived by the agreement itself, by the provision that it "shall be and constitute the rights and obligations of the parties hereto in lieu of the relief sought by the party of the first part in her aforesaid action * * *." Obviously the court refrained from providing for alimony and child support for the reason that these matters were otherwise taken care of by the agreement. We hold that the obligation of appellant was, therefore, contractual, and affirm the holding of this

court on the former appeal. We shall not elaborate upon or repeat the rules established by the authorities cited in that opinion, but add to those authorities the following: Elliott v. Dunham, 191 Okl. 395, 130 Pac. (2d) 534; 27 C. J. S., Divorce, sec. 301, p. 1159; 17 Am. Jur. 495; Kastner v. Kastner, 90 Colo. 280, 9 Pac. (2d) 290. And see 27 C. J. S., Divorce, sec. 238, p. 987; North v. North, 339 Mo. 1226, 100 S. W. (2d) 582, 109 A. L. R. 1061, and supporting cases; Miller v. Superior Court, 9 Cal. (2d) 733, 72 Pac. (2d) 868; Ettlinger v. Ettlinger, 3 Cal. (2d) 172, 44 Pac. (2d) 540.

Next is presented the assignment of error by the trial court in refusing to reform the settlement agreement. The amended answer in each of the three actions involved contains a second and affirmative defense, counterclaim and cross-complaint, identical in each case. This alleges the execution of the agreement sued upon; that through the mutual inadvertence, accident, mistake and omission of the parties, those clauses of said instrument prescribing the monthly payments promised and undertaken by the defendant were incomplete, in that while it was understood and agreed by both parties that the duty to pay $150 monthly for the support in part of the minor child should continue while said child should live, and should be under the disability of infancy, and should be dependent upon the plaintiff under the court's award of custody, it should cease in the event of the death of the child, or in the event she should cease to have the status of an infant; that it never was agreed or understood that defendant should be obligated to continue to make payments for the support of the child during her entire life span or after she should have reached the age of majority; that nevertheless, through such inadvertence, accident, mistake and omission, the parties in drafting the agreement failed entirely to express in writing that the defendant's obligation to pay for the support of the child should be so limited, and that the same was to terminate upon either of the contingencies of death or cessation of infancy or dependency. It further alleges that the contract failed to

express the agreement that plaintiff's custody of the child should be limited to the period of her infancy, and thereafter terminable, and was in that respect incomplete; that the child attained her majority on April 20, 1941, and that thereupon the award of custody contained in the decree cease to be effective as to any custody or dependency as between plaintiff and the child. Further, that the contract does not provide, and the parties in fact did not agree, as to what portion of the monthly payments was to be applied by plaintiff to her own uses and needs and what portion applied to the uses and needs of the child in its status as the dependent infant child of the defendant; nor have the parties since agreed as to such division; that before the commencement of the actions the defendant ceased to become liable for the sum of $150 per month, or any sum certain.

By reply in each case plaintiff denied the material allegations of the counterclaim and cross-complaint; alleged the understanding and agreement that plaintiff was to receive, in lieu of property rights, dower and interest in the property acquired during coverture, the sum of $150 per month, to be discontinued only upon remarriage of plaintiff or her becoming possessed of an income sufficient for her support and maintenance; that in consideration of such promise, plaintiff was to undertake the support of the minor child, and, upon the happening of either condition subsequent, suitable provision was to be made for support of the child.

A thorough examination of the record leaves us without doubt that appellant failed to produce evidence to support his contention that the contract does not reflect the true understanding of the parties, or that by reason of the mutual inadvertence, accident, mistake or omission the contract was incomplete or inaccurate in the respects alleged. Without setting out in detail the evidence bearing upon this question, suffice it to say that in our opinion the record amply sustains the finding of the trial court that by the terms of the agreement the monthly payments of $150 were to continue until

(a) the plaintiff should remarry, or (b) plaintiff should become possessed of an income sufficient to that end [maintenance of plaintiff], except from her own earnings. It also sustains the conclusion of law "That the property settlement agreement entered into between the plaintiff and defendant on September 7, 1935, fully expressed and expresses the agreement of the parties and provided by its terms that defendant would pay to the plaintiff the sum of $150 per month until she remarried or became possessed of an income sufficient to that end outside of her own earnings." For example, this testimony of defendant, on cross-examination:

"Q. And what, if anything, was said between you and Mrs. Kay Towne prior to entering into of the agreement, Exhibit A, concerning any change in the amount of the monthly payments required of you? A. Her request was for $200.00. We compromised on $150.00.

"Q. The question was intended to ask you whether there was any discussion between you on that being changed in the future, being changed, raised or lowered in any way in the future. A. No.

"Q. In other words, was there anything stated to the effect that she should be entitled to collect more upon any contingency arising or that she might be contented with less upon any contingency? A. I don't recall there was. I am not prepared to say it wasn't mentioned, but I don't recall that it was along those lines."

His testimony indicates that his belief that his obligation ▮ to make financial provision for the child would cease at her majority was based on, "Previous experience of a duplicate situation." Respondent's testimony, as a whole, negatives mutual inadvertence, mistake or omission contended for by appellant. Appellant has failed to furnish clear, convincing and satisfactory proof required to establish mutual mistake. Humble v. St. John, 72 Mont. 519, 234 Pac. 475, and cases cited.

Appellant cites authority for the rule that the court has no

power to make a decree as to the maintenance of minor children beyond the date when they shall arrive at their majority. In view of our holding that the obligation is contractual, rather than decretal, this has no application.

The remaining question is raised by specification of error No. 2, that "The court erred in refusing to find that under the provisions of the contract in issue, without reformation thereof, the plaintiff had received sufficient income to render the alimony payments terminated or suspended between January, 1942, and June, 1943, inclusive."

On this issue the court found, "That plaintiff did not become possessed of an income sufficient for the support and maintenance of herself since September 7th, 1935."

The applicable provision of the agreement is, "* * * in the event the party of the first part shall remarry, or that she shall otherwise become possessed of an income sufficient to that end [the support and maintenance of plaintiff and the minor child?], apart from her own earnings as they may hereafter arise, the obligation of the second party in the sum of One Hundred Fifty ($150.00) Dollars per month for the purposes above specified, shall terminate, and that, thereafter, obligation with respect to the support and maintenance of said minor child, Patricia Towne, shall be determined * * *."

The first affirmative defense to each of the three actions alleges, "that plaintiff during the pendency of this action became possessed of substantial property and income, which was sufficient for her support and maintenance." The evidence shows that during the months of March and May, 1942, plaintiff received $8,500 in settlement of a personal injury action. Of this amount she paid attorney's fees of $2,500, legal expense $57.25, hospital and medical expense for treatment of injuries $1,229.81, leaving her a net recovery of $4,712.94. Appellant contends that this amount was income within the contemplation of the above provision of the agreement. With reference to this money, he alleges "That the plaintiff, in settlement of a personal injury action, received the sum of

$8,500.00, which sum has been expended in the payment of attorneys' fees, hospital and medical care, and in the support and maintenance of herself and daughter." Appellant complains of the court's refusal to find that such expenditures were reasonable or necessary. The record does not disclose that such a finding was requested. Appellant's proposed finding of fact No. 2, refused by the court, provides that the settlement received by respondent was more than sufficient to support respondent between the 9th day of February, 1942, and the time of trial.

Webster's International Dictionary, 2d Ed., defines "income" as, "That gain or recurrent benefit (usually measured in money) which proceeds from labor, business or property; commercial revenue or receipts of any kind. * * * Syn.—Gain, profit, proceeds, salary, revenue, receipts, interest, emolument, produce."

The following definition of "income," as contemplated by an income tax statute, was approved in Featherstone v. Norman, 170 Ga. 370, 153 S. E. 58, 65, 70 A. L. R. 449: " 'Income is something derived from property, labor, skill, ingenuity or sound judgment, or from two or more in combination. It is not commonly thought of as property but as gain derived from property, or some other productive source.' Stony Brook R. Corp. v. Boston [& M. R. R.], 260 Mass. 379, 157 N. E. 607, 610, 53 A. L. R. 700."

Proceeds of suits or settlements for personal injuries are expressly excluded from income taxable by Montana income tax law. Revised Codes 1935, section 2295.7, as amended by Chapter 7, Laws of 1939.

Regardless of whether or not the term "income," as used by the parties in the agreement, comes within the commonly understood and defined meaning of the word, our duty is to construe the real meaning within the contemplation of the parties, as expressed by the provisions of the agreement. We believe, and so hold, that the term "income" as therein used, was not intended by the parties to include the proceeds

of the settlement of an action for personal injuries. The income contemplated appears to mean income of a permanent and continuing nature. This is shown by the provision that appellant's obligation to make the specified payments should terminate upon the happening of the contingency expressed. "Terminate" is defined by Webster as "To put an end to; to make to cease; to end." It cannot be argued that the parties intended that appellant's obligation should forever cease if and when respondent should acquire a temporary income or a sum of money sufficient to provide a livelihood for her for a time. Had the parties intended that the obligation would temporarily cease in either of such events, they would logically and correctly have used the words "be suspended" rather than "terminate." Appellant is a man of considerable education and business acumen and must be assumed to have intended that the terms used should be considered in their clear and commonly accepted meaning. Our duty is to construe, not rewrite, the contract. We can find no other meaning, either from the provisions of the agreement or the evidence. We conclude that the trial court correctly ruled on this question, and that its finding thereon is correct.

There being no error, the judgment is affirmed.

Mr. Chief Justice Johnson, and Associate Justice Adair, concur.

Mr. Justice Angstman, (dissenting).

For the reasons stated by Mr. Justice Morris and myself on the former appeal, State ex rel. Towne v. Second Judicial District Court, 114 Mont. 1, 132 Pac. (2d) 161, I think the provision regarding the payment of alimony was decretal and subject to modification upon a change of circumstances.

This is particularly true so far as the amount of the award was affected by the fact that there was a minor child involved, whose custody was awarded to the mother pursuant to the agreement. In such a case the amount agreed to be paid for the care and custody of the minor is subject to modification though not mentioned in the decree at all.

In Kane v. Kane, 53 Mont. 519, 165 Pac. 457, 459, this court said: "Though the separation agreement is binding upon the parties to it and regulates their rights and obligations inter sese, it is not binding upon either the child or the court. If its provisions for the care of the child are inadequate or become inadequate, the father may be called upon to supplement them by further contributions, notwithstanding the agreement by the mother releasing him from further costs or expenses." This case was followed with approval in State ex rel. Floch v. District Court, 107 Mont. 185, 81 Pac. (2d) 692.

If the award may be increased notwithstanding the agreement, then for the same reason it should be subject to modification by reduction. In other words, it will not do to say that the obligation to pay for the support of the child is contractual to the extent that it cannot be decreased but is decretal so as to permit the court to increase it. It is either one or the other for all purposes. I think the obligation is decretal where, as here, the court in legal effect adopted the agreement by reference in the decree. Slacum v. Slacum, 158 Md. 107, 148 A. 226; Walsh v. Walsh, 19 Cal. App. (2d) 26, 64 Pac. (2d) 753. The only reason why the agreement was made subject to the approval of the court was because it dealt partially with a subject matter that is not binding upon the court without approval, viz., the support of a child.

By approval of the agreement, the court in effect held that the agreement was fair and just to the child and to all intents and purposes made the agreement a part of the decree, which is always subject to change.

Mr. Justice Morris, (dissenting).

I concur in the foregoing dissent of Mr. Justice Angstman and, for my further views on the questions involved in the controversy, hereby refer to my dissent in an action between the same parties reported in State ex rel. Towne v. Second Judicial District Court, 114 Mont. 1, 132 Pac. (2d) 161.

Rehearing denied June 16, 1945.